IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONARD BELLAVIA, )<br> )<br> Plaintiff, )<br> ) Civil Action No.<br> v. )<br> ) _____<br>PENNSYLVANIA HIGHER EDUCATION )<br>ASSISTANCE AGENCY d/b/a )<br>AMERICAN EDUCATION SERVICES, )<br> )<br> Defendant. ) | |

## COMPLAINT

Plaintiff Leonard Bellavia, by and through his attorneys Bellavia Blatt, P.C., as and for his Complaint, alleges as follows:

### Nature of the Action

1. Plaintiff brings this action to obtain relief for defendant's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

### Parties

2. Plaintiff Leonard Bellavia is a natural person.

3. At all relevant times, Plaintiff was a resident of East Islip, Suffolk County, New York.

4. Plaintiff was a debtor and a consumer, as defined in the FCRA, 15 U.S.C. § 1692a.

5. Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") is a foreign not-for-profit corporation.

1

6. PHEAA does business under several fictitious names, including, *inter alia,* American Education Services ("AES").

7. PHEAA is a national provider of student financial aid services. It guarantees educational loans, services student loans, and provides financial aid processing services.

8. The AES arm of PHEAA services both governmental and private student loans.

9. As a loan servicing company, defendant is responsible for performing a variety of functions, including, without limitation: processing student loan repayment; maintaining records of a student's educational loans; billing; responding to requests for information from borrowers; accepting applications to change repayment plans; processing repayment plan changes; accepting applications for consolidation, deferment, and forbearance; and ensuring that loans are administered in compliance with federal rules and regulations.

10. Defendant is a debt collector, as that term is defined in 15 U.S.C. §1692a(6).

11. Defendant is a furnisher of information, as contemplated by 15 U.S.C. § 1681s-2(a) & (b). Defendant regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers.

12. Defendant maintains its corporate office in Harrisburg, Pennsylvania. However, defendant services loans throughout the United States of America, including in Suffolk County, New York. Defendant regularly conducts business to service, collect, and report on student loans in Suffolk County, New York.

13. Numerous governmental investigations have determined that defendant has engaged in rampant mismanagement and mishandling of student loan accounts.

14. Investigations by the Federal Consumer Financial Protection Bureau and the United States Department of Education Inspector General revealed defendant's flawed processing of payments, botched paperwork, and maintenance and use of inaccurate information.

15. Defendant and the Department of Education had entered into contracts from 2014 through 2020, for defendant to service student loans, which contracts were worth hundreds of millions of dollars. However, the Department of Education terminated its contracts with PHEAA, due to defendant's rampant errors and mismanagement.

16. The New York State Attorney General filed a lawsuit alleging that defendant had failed to properly manage student loans, inaccurately charging students, erroneously counting loan payments, and improperly processing applications. The Attorney General alleged that defendant steered clients toward consolidation of loans, and misrepresented the benefits and disadvantages of consolidation. PHEAA entered into an agreement to settle with the New York State Attorney General in or about April 27, 2022, which requires defendant to audit thousands of accounts to identify and correct pervasive errors and rectify defendant's mismanagement. The agreement also requires defendant to provide restitution to some borrowers, as appropriate.

17. The Massachusetts Attorney General found that defendant had engaged in deception, improper delays to collect increased interest charges and payments, overbilling, and double billing. In or about February, 2021, defendant entered into an agreement to settle the Massachusetts Attorney General's complaint, requiring defendant to correct errors and provide certain economic relief.

18. On information and belief, defendant agreed to comply with the FCRA when it signed agreements with the credit reporting agencies, including Experian, Trans Union, and Equifax.

## Jurisdiction and Venue

19. This Court has jurisdiction over this matter under the FCRA, 15 U.S.C. § 1681p.

20. Defendant is subject to personal jurisdiction in this Court.

21. Venue is proper in this Court.

22. Defendant conducts business in this State and District.

23. The acts complained of herein occurred in this State and District.

24. Plaintiff resides in this District.

## Factual Allegations

25. Plaintiff sought to assist his daughter in obtaining her college education.

26. Toward this end, Plaintiff acted as a co-borrower of his daughter's student loans.

27. Plaintiff was a co-borrower on, *inter alia,* two loans issued through the Massachusetts Educational Financing Authority ("MEFA").

28. AES serves as the loan servicing provider for all of MEFA's educational loan borrowers, according to the MEFA website.

29. Defendant offered to Plaintiff to consolidate the two loans and service them as a single loan.

30. To promote consolidation of loans, defendant represented that loan consolidation would offer to Plaintiff and his daughter a variety of benefits, including, without limitation, greater ease of payment and other financial advantages.

31. Reasonably relying on defendant's representations, Plaintiff and his daughter, as co-borrowers, accepted defendant's offer to consolidate two student loans into a single loan with a single account number, 26 0273 2943.

32. After consolidation, defendant sent monthly bills to Plaintiff and his daughter seeking payment on the single, consolidated loan account.

33. Defendant timely paid the consolidated loan.

34. Plaintiff monitored his credit report.

35. In or about March, 2023, Plaintiff received notification that defendant's records about the loan were inaccurate.

36. In addition, Plaintiff discovered that defendant had reported to credit reporting agencies inaccurate, false, and incomplete information about the status of the consolidated student loan, and about the credit-worthiness of Plaintiff and his daughter.

37. Plaintiff learned that defendant had made at least two misrepresentations about the loan.

38. First, defendant reported that Plaintiff and his daughter had paid the loan fifty-nine (59) days late. This was untrue.

39. Secondly, defendant reported that Plaintiff and his daughter had made fifty-nine (59) day late payments on two (2) loans, rather than on a single, consolidated loan. This was untrue.

40. To correct these inaccuracies, Plaintiff contacted defendant, including in writing.

41. Plaintiff filed a dispute with AES online, on or about March 8, 2023.

42. Plaintiff completed and sent to AES the AES Direct Credit Dispute Form, on or about March 27, 2023.

43. Plaintiff again sent a completed AES Direct Credit Dispute Form to AES on or about April 11, 2023.

44. Plaintiff requested that defendant remove the false and inaccurate reports from his and his daughter's credit reports, and instead, furnish correct information to credit reporting agencies.

45. Defendant failed and refused to correct the inaccurate credit reports of Plaintiff and his daughter.

46. Instead, defendant intentionally chose to continue to furnish misleading information about the status of the consolidated loan and the credit-worthiness of Plaintiff and his daughter to the credit reporting agencies.

47. Defendant failed to provide to Plaintiff any information to support its position that the information that defendant had furnished about Plaintiff and his daughter to the credit reporting agencies was accurate.

48. After receiving Plaintiff's credit dispute, defendant had a duty to conduct a detailed and systematic inquiry to determine if it should still report the single, consolidated loan as two loans, and if it should continue to report the two loans as fifty-nine (59) days late.

49. On information and belief, defendant could not possibly have performed the required investigation into Plaintiff's credit dispute.

50. Any reasonable inquiry would have determined the falsity of defendant's records and reports, since the two loans had already been consolidated into a single loan, rendering the reporting of two loans false.

51. Furthermore, defendant had no proof that Plaintiff had been fifty-nine (59) days late in his payment of two loans, let alone the single student loan.

52. If defendant had maintained proper records, or performed any investigation, defendant would have determined the falsity of its report about two loans being fifty-nine (59) days late.

53. Despite its duties to investigate and accurately report payments, defendant continued to make false reports about Plaintiff and his daughter.

54. Defendant's inaccurate, derogatory reports about Plaintiff, his daughter, and the status of the student loan payment, have had a substantial, negative effect on Plaintiff and his daughter.

55. Plaintiff and his daughter suffered economically, as a result of the defendant's misconduct.

56. The false, misleading, and inaccurate reports negatively impacted the credit ratings of Plaintiff and his daughter.

57. Creditors and prospective creditors were misled by the improperly lowered credit score resulting from defendant's erroneous information.

58. Credit scoring algorithms took defendant's false information into account when calculating and generating a credit score, on information and belief.

59. The defendant's negative information caused the credit score of Plaintiff and his daughter to be lower than it should have been, had the information reported by defendant been correct.

60. The lower credit score hurt Plaintiff's and his daughter's creditworthiness.

61. Lenders and creditors have different tiers of risk. A consumer with a lower credit score will often be placed into a lower tier, on information and belief.

62. Lenders make credit lending decisions, and impose charges, based on credit scores.

63. Lower credit ratings impair the ability to obtain financing, including mortgage loans, automobile loans, personal loans, credit lines, and credit cards.

64. Lower credit ratings cause lenders and creditors to make negative financial decisions, including refusing to provide credit, canceling credit, charging higher interest rates, and imposing other negative financial terms and conditions on consumer-borrowers.

65. False credit data also cause the loss of credit and denial of credit.

66. False credit information also has the ability to impair the ability to obtain work or housing, when the credit information appears on background checks.

67. Plaintiff and his daughter suffered stress, anxiety, embarrassment, humiliation, and emotional distress, as a result of the defendant's misconduct and omissions.

68. Plaintiff and his daughter were forced to expend time and money trying to repair the damage to their credit.

69. Plaintiff has no adequate remedy at law.

## COUNT 1
(Violation of Fair Credit Reporting Act)

70. Plaintiff repeats the allegations contained in the above paragraphs and incorporates them herein by reference, as if fully stated herein.

71. Defendant violated the FCRA.

72. Defendant did not satisfy its obligations under 15 U.S.C. § 1681s.

73. Defendant had, and breached, its duties, including, *inter alia*:

a. its duty to maintain accurate records, including regarding the number of loans, whether loans had been consolidated, and the timing of payments on loans;

b. its duty to demand the proper amount of payment, and not demand monies that were not due;

c. its duty to maintain proper processes, policies, and controls, to ensure proper credit reporting;

d. its duty to maintain proper processes, policies, and controls, to ensure proper billing;

e. its duty to furnish accurate and complete financial and credit information about the Plaintiff's account to the credit reporting agencies, including, without limitation, regarding the number of loans, the consolidation of loans, whether loans were timely paid, and the number of days late that loans were paid;

f. its duty to investigate fully any dispute with borrowers, consumers, or debtors;

g. its duty to report an account as disputed by the consumer-borrower;

h. its duty to correct any erroneous information;

i. its duty to verify the facts and the accuracy of its credit reporting and the account status;

j. its duty to validate the debt; and

k. its duty to report accurately to credit reporting agencies the results of a proper investigation, based on a review of validated and verified documents.

74. Defendant falsely and inaccurately reported the Plaintiff's loans as two accounts, rather than a single, consolidated loan.

75. Defendant falsely and inaccurately reported the two alleged loans as fifty-nine (59) days late.

76. Defendant failed to investigate, once notified of these inaccuracies and disputes.

77. Defendant failed to maintain accurate records, to enable it to furnish accurate information that would not injure borrowers, consumers, or debtors.

78. Defendant failed to validate its records, after receipt of notice that its reports were inaccurate, objected to, or disputed.

79. Defendant failed to correct its inaccurate reports, after receiving notice of the inaccuracies and the credit dispute.

80. Defendant continued to furnish and disseminate inaccurate and derogatory information concerning Plaintiff to credit reporting agencies.

81. Defendant acted negligently, recklessly, and/or intentionally.

82. Defendant had notice of the consolidation of the loans, of the timing of payments, of the inaccuracy of its reports, and of Plaintiff's dispute.

83. Defendant knew or should have known that its wrongful actions and inactions would cause Plaintiff and his daughter, as borrowers, consumers, or debtors, to suffer financial and emotional harm, due to the negative impact on their credit reports.

84. As a direct and proximate result of defendant's wrongful actions and omissions, Plaintiff suffered injuries.

85. Plaintiff's damages include financial harm, including, without limitation, to his credit worthiness; increased difficulty in obtaining credit; and credit provided on less advantageous financial terms and conditions.

86. Plaintiff also incurred emotional injuries, including, without limitation, embarrassment, humiliation, worry, emotional distress, and interference with familial relationships.

87. Plaintiff is entitled to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs, as a result of defendant's willful violation of the FCRA, in an amount to be determined at trial, under 15 U.S.C. §1681n.

88. Alternatively, defendant's negligence entitles Plaintiff to recover actual damages and attorneys' fees and costs, under 15 U.S.C. § 1681o.

## Demand for Trial by Jury

Plaintiff demands trial by jury as to all issues as to which a jury trial is permitted.

## Prayer for Relief

Wherefore, Plaintiff requests the following relief:

a. Judgment awarding actual damages, in an amount to be determined at trial,

b. Judgment awarding statutory damages,

c. Judgment awarding punitive damages,

d. Judgment awarding to Plaintiff attorney's fees, costs, and disbursements,

e. injunctive and other equitable relief requiring defendant to report correctly the Plaintiff's and his daughter's loan status as a single loan that was not paid fifty-nine (59) days late,

f. pre-judgment interest,

g. post-judgment interest, and

h. such other relief which the Court deems just and proper.

Dated: April 13, 2023
      Mineola, NY

_____
Bellavia Blatt, P.C.
Leonard A. Bellavia, Esq.
200 Old Country Road, Suite 400
Mineola, NY 11501
(516) 873-3000
(516) 837-9032 (facsimile)
lbellavia@dealerlaw.com
Attorneys for Plaintiff

12